[Cite as *State v. Hill*, 2023-Ohio-4486.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2023-T-0039 |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| DANNY LEE HILL, | |
| Defendant-Appellant. | Trial Court No. 1985 CR 00317 |

**O P I N I O N**

Decided: December 11, 2023
Judgment: Reversed and remanded

*Dennis Watkins*, Trumbull County Prosecutor and *Charles L. Morrow*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481, and *Stephen Maher*, Special Assistant Prosecutor, Senior Assistant Attorney General, 30 East Broad Street, 23rd Floor, Columbus, OH 43215 (For Plaintiff-Appellee).

*Stephen Newman*, Federal Public Defender, *Calland M. Ferraro*, Assistant Federal Public Defender, and *Matthew Gay*, Assistant Federal Public Defender, Capital Habeas Unit, 1660 West Second Street, Suite 750, Cleveland, OH 44113 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1} The issue before this Court is a narrow one. When an individual sentenced to death previously filed a petition for postconviction relief under *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 and it was denied, may he file a Civ.R. 60(B) motion for relief from judgment or seek a second postconviction relief petition after the legal authority on which the prior denial was based has been reversed or otherwise vacated?

{¶2}    Appellant, Danny Lee Hill, appeals after the trial court issued judgment entry recasting appellant's Civ.R. 60(B) motion as a petition for postconviction relief. The trial court determined that Crim.R. 35 and R.C. 2953.23 set forth the procedure for seeking postconviction relief. Therefore, Crim.R. 57, allowing the application of the Civil Rules of Procedure where no Rule of Criminal Procedure exists, did not permit appellant to file a Civ.R. 60(B) motion for relief from judgment. In concluding this, the trial court applied *State v. Schlee,* 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431. The trial court further concluded that appellant did not satisfy the requirements for postconviction relief under R.C. 2953.21 and R.C. 2953.23.

{¶3}    Appellant has raised two assignments of error arguing the following: (1) the trial court erred by recasting his Civ.R. 60(B) motion for relief from judgment into a second petition for postconviction relief pursuant to *Schlee*; (2) the trial court erred in concluding appellant did not meet the requirements for a second postconviction relief petition.

{¶4}    Having reviewed the record and the applicable caselaw, we find appellant's first assignment of error to have merit. The trial court erred when it concluded appellant's Civ.R. 60(B) motion for relief from his prior *Atkins* postconviction relief judgment was an irregular motion subject to be recast under *Schlee*. Appellant's Civ.R. 60(B) motion related to his initial *Atkins* petition for postconviction relief, which was a collateral civil matter. There was no need to recast his civil motion into an appropriate motion as provided under the Criminal rules.

{¶5}    Therefore, we reverse the judgment of the Trumbull County Court of Common Pleas, and this case is remanded for the trial court to consider appellant's Civ.R. 60(B) motion for relief from judgment.

2

**Substantive and Procedural History**

{¶6} Appellant's convictions are based on the murder of Raymond Fife on September 10, 1985. The factual record is set forth in detail in *State v. Hill*, 11th Dist. Trumbull Nos. 3720 and 3745, 1989 WL 142761 (Nov. 27, 1989), and *State v. Hill*, 64 Ohio St.3d 313, 595 N.E.2d 884 (1992).

{¶7} Although appellant raised issues of his intellectual disability during the mitigation phase of his sentencing, nothing at the time barred the imposition of the death penalty for persons with intellectual disabilities. Appellant was sentenced to death.

**Initial Petition for Postconviction Relief pursuant to *Atkins*:**

{¶8} In 2002, the United States Supreme Court determined the Eighth Amendment's bar against cruel and unusual punishment prohibits the imposition of the death penalty for "mentally retarded" [1] persons. *Atkins* at 321.

{¶9} In the wake of *Atkins*, the Ohio Supreme Court set forth three criteria for establishing whether a person is intellectually disabled. *State v. Lott,* 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011. Under *Lott*, a defendant was required to demonstrate*:* "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." *Id.* at ¶ 12. The court further held that "[w]hile IQ tests are one of the many factors that need to be considered, they alone are not sufficient to make a final determination on this issue," and "there is a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70." *Id.*

---

1. "Mentally retarded" was the prior term for "intellectual disability." Intellectual disability is used throughout this opinion consistent with current usage.

Case No. 2023-T-0039

{¶10} In 2003, as a result of the *Atkins* and *Lott* decisions, appellant filed a petition to vacate his death sentence through a petition for postconviction relief under R.C. 2953.21. The trial court ruled that appellant's petition stated "substantive ground for relief sufficient to warrant an evidentiary hearing." *State v. Hill*, 177 Ohio App.3d 171, 2008-Ohio-3509, 894 N.E.2d 108, ¶ 15 (11th Dist.). The Court, the State, and appellant each obtained experts to assess appellant's intellectual disability. *Id.* at ¶ 16.

{¶11} The State retained Dr. J. Gregory Olley, a professor at the University of North Carolina at Chapel Hill and a director of the university's Center for the Study of Development and Learning. *Id.* Hill retained as his expert Dr. David Hammer, a professor at the Ohio State University and the director of psychology services at the university's Nisonger Center. *Id.* The court, through the Forensic Center of Northeast Ohio, retained Dr. Nancy Huntsman, of the Court Psychiatric Clinic of Cleveland. *Id.*

{¶12} The experts evaluated appellant and determined that he was malingering and therefore resorted to collateral sources such as appellant's school records and evaluations performed at the time of his sentencing and institutional records obtained during his incarceration to reach their conclusions. *Id.* at ¶ 17.

{¶13} At the *Atkins* evidentiary hearing, Dr. Olley, the State's expert, testified that appellant was not mentally disabled. *Id.* at ¶ 18. Dr. Huntsman came to the same conclusion while appellant's expert, Dr. Hammer, concluded he qualified for a diagnosis of "mild" intellectual disability. *Id.*

{¶14} In 2006, the trial court rejected appellant's petition for postconviction relief and appellant appealed to this Court in *State v. Hill*, 177 Ohio App.3d 171, 2008-Ohio-3509, 894 N.E.2d 108 (11th Dist.). One of appellant's assignments of error in that appeal

4

argued that the trial court erred in determining he was not a person with intellectual disability.

{¶15} Reviewing the trial court's denial of his postconviction relief petition under an abuse of discretion standard, this Court concluded appellant satisfied the first prong of the *Lott* criterion because he had significantly subaverage intellectual functioning. *Id.* at ¶ 76. However, we concluded there was "abundant competent and credible evidence to support the trial court's conclusion" that appellant had not satisfied the second prong because appellant did not carry his burden of demonstrating significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction. *Id.* at ¶ 99. Finally, because appellant failed to meet the second prong, he necessarily failed to demonstrate the onset of his intellectual disability before age 18. *Id.* at ¶ 100. One judge dissented, asserting the trial court abused its discretion in finding appellant had not demonstrated he was a person with intellectual disability under the three-prong test then in effect under *Lott.* *Id.* at ¶ 118. (O'Toole, J. Dissenting).

**Subsequent judicial precedent:**

{¶16} After appellant's *Atkins* postconviction petition was denied, the United States Supreme Court rendered decisions in *Hall v. Florida*, 572 U.S. 701, 134 S.Ct. 1986, 188 L.Ed.2d 1007 (2014), *Moore v. Texas*, 581 U.S. 1, 137 S.Ct. 1039, 197 L.Ed.2d 416 (2017) ("*Moore I*"), and *Moore v. Texas*, 586 U.S. ----, 139 S.Ct. 666, 203 L.Ed.2d 1 (2019) ("*Moore II*"), which struck down state-court decisions on intellectual disability by applying updated medical diagnostic standards.

5

{¶17} After those decisions, the Supreme Court of Ohio decided *State v. Ford,* 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, and announced the *Lott* test for intellectual disability was outdated. *Id.* at ¶ 100. Specifically, the Court in *Ford* held that the *Lott* test was "the wrong standard" because of its rebuttable presumption that an offender is not intellectually disabled where the offender's IQ score is above 70 and its requirement of finding significant limitations in two or more adaptive skills. *Id.* at ¶ 94-95, 97.

{¶18} The updated, and current, test Ohio courts must consider in determining intellectual disability is: (1) intellectual-functioning deficits (indicated by an IQ score of approximately 70 or lower); (2) significant adaptive deficits in any of the three adaptive-skill sets (conceptual, social, and practical); and (3) the onset of these deficits while the defendant was a minor. *State v. Williams*, 2021-Ohio-241, 167 N.E.3d 527 (11th Dist.), *appeal not allowed*, 163 Ohio St.3d 1493, 2021-Ohio-2270, 169 N.E.3d 1276, ¶ 30, citing *Ford* at ¶ 100.

**Appellant's reevaluation under current judicial precedent:**

{¶19} After appellant exhausted his State court remedies through direct appeals and his petition for post-conviction relief, he pursued Federal habeas relief under *Atkins*. Those proceedings concluded with the United States Supreme Court denying a writ of certiorari for his *Atkins* claim in June 2022. *Hill v. Shoop*, --- U.S. ---, 142 S.Ct. 2579, 213 L.Ed.2d 1134 (2022).

{¶20} During the pendency of appellant's petition for certiorari, Dr. Olley, the State's expert witness in appellant's initial *Atkins* claim, reevaluated appellant in light of

6

Case No. 2023-T-0039

the new standards set forth in *Ford*. Dr. Olley concluded that appellant "has been a person with intellectual disability since early childhood."

{¶21} In July 2022, appellant filed a "Civil Rule 60(B) Motion for Reconsideration of Determination Under *Atkins v. Virginia* with Request for Evidentiary Hearing." Appellant argued that under Civ.R. 60(B)(4) and (5), he was entitled to relief from the denial of his *Atkins* petition for postconviction relief because he had been evaluated under the now outdated *Lott* standard. Alternatively, appellant argued he was entitled to file a second petition for postconviction relief under *Atkins*. Appellant appended two volumes of exhibits, including Dr. Olley's new report and an affidavit, which he maintained supported his argument that he was a person with intellectual disability under the new *Ford* standard. Appellant argued he was entitled to relief from the court's denial of his *Atkins* claim because subsequent events, including the updated definition of intellectual disability under Ohio law rendered it inequitable to continue under his prior *Atkins* postconviction relief judgment.

{¶22} The State moved to dismiss appellant's Civ.R. 60(B) motion, arguing that it should be recast as a second petition for postconviction relief under *State v. Schlee,* 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431 because it was: (1) filed subsequent to his direct appeal; (2) claimed a denial of his constitutional rights; and (3) sought reversal of the judgment rendered against him. The State further argued that appellant did not meet the statutory requirements for filing a second *Atkins* petition for postconviction relief.

{¶23} In response, appellant argued that Civ.R. 60(B) was the appropriate procedure for his motion as he was seeking "to reopen his [postconviction relief] proceedings," not to vacate his conviction. Rather, he merely sought a new *Atkins* hearing

7

under the appropriate and current standard. Appellant also argued that he was entitled to a second postconviction relief petition because the *Ford* decision was necessitated by new United States Supreme Court rulings in *Moore I* and *II.*

{¶24} The State replied appellant was actually trying to have his death sentence vacated rather than seeking relief from the postconviction judgment and, because of this, his remedies were confined to postconviction relief.

{¶25} On May 3, 2023, the trial court issued a nunc pro tunc judgment entry recasting appellant's Civ.R. 60(B) motion as a petition for postconviction relief. The trial court determined that Crim.R. 35 and R.C. 2953.23 set forth the procedure for seeking postconviction relief. Therefore, Crim.R. 57, allowing the application of the Civil Rules of Procedure where no Rule of Criminal Procedure exists, did not permit appellant to file a Civ.R. 60(B) motion for relief from judgment. In concluding this, the trial court applied *Schlee*.

{¶26} The court then concluded that appellant failed to satisfy the requirements for filing a second petition because he had not been unavoidably prevented from discovering the facts he relied upon to present it. The court said that appellant had known the historical facts of the case and Dr. Olley's change of opinion about appellant's intellectual disability in light of *Ford* "is not the type of historical fact contemplated by R.C. 2953.21. * * * The report offers a new opinion, not new facts or evidence." (Citing *State v. Jackson*, 2020-Ohio-4015, 157 N.E.3d 240 (3rd Dist.)).

{¶27} The trial court further concluded that R.C. 2953.23(A) jurisdictionally barred the court from reviewing the untimely second petition because the United States Supreme

8

Court did not create a new state or federal right. Instead, *Hall*, *Moore I*, and *Moore II* merely analyzed the application of *Atkins* claims.

{¶28} Finally, the trial court found appellant could not demonstrate "by clear and convincing evidence" that but for a constitutional error at trial he would not have been found guilty as required under R.C. 2953.23(A)(1)(b). However, the trial court did not similarly conclude appellant could not demonstrate that "but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence" as also set forth in R.C. 2953.23(A)(1)(b).

{¶29} Appellant timely appealed, raising two assignments of error.

## Assignments of Error and Analysis

{¶30} Appellant's first assignment of error states:

{¶31} "[1.] The Trial Court Erred In Holding That Civil Rule 60(B) Is An Improper Vehicle For Seeking Relief From A Prior Post-Conviction Judgment. (T.d. 446, pp. 4-5)."

{¶32} Appellant filed a Civ.R. 60(B) motion for relief from judgment. The trial court recast that motion as a second petition for postconviction pursuant to *State v. Schlee* and Crim.R. 57.

{¶33} Appellant argues this was improper because he sought relief from the judgment in his original *Atkins* postconviction relief petition, and not the judgment of conviction itself. As the *Atkins* petition was a collateral civil matter, he argues there is no need to rely on Crim.R. 57 or *Schlee* to recast his Civ.R. 60(B) motion because the Civil rules are the applicable procedural mechanism to seek relief from a civil judgment.

9

**Postconviction relief:**

{¶34} The procedures for postconviction relief are set forth in R.C. 2953.21 et seq. These statutes provide the framework for reviewing an *Atkins* claim. *State v. Williams*, 2021-Ohio-241, 167 N.E.3d 527 at ¶ 31. Petitioners raising an *Atkins* claim for postconviction relief bear the burden of establishing their intellectual disability by a preponderance of the evidence. *Id.*

{¶35} "[A] postconviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment." *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999). A postconviction petitioner "receives no more rights than those granted by the statute.'" *Id.* "This means that any right to postconviction relief must arise from the statutory scheme enacted by the General Assembly." *State v. Apanovitch,* 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, at ¶ 35.

{¶36} "[C]ases of postconviction relief pose difficult problems for courts, petitioners, defense counsel and prosecuting attorneys alike." *State v. Milanovich,* 42 Ohio St.2d 46, 51, 325 N.E.2d 540 (1975).

> Cases long considered to be fully adjudicated are reopened, although memories may be dim and proof difficult. The courts justifiably fear frivolous and interminable appeals from prisoners who have their freedom to gain and comparatively little to lose. Yet these very difficulties make imperative the duty of courts to carefully exercise their judicial functions, and, most importantly, the duty of prosecuting attorneys to exercise their functions as adversaries, within the procedural framework set out in R.C. 2953.21.

*Id.* at 51-52.

**Civ.R. 60(B):**

{¶37} Ordinarily, a movant filing a Civ.R. 60(B) motion for relief from judgment must satisfy the three-prong test set out in *GTE Automatic Elec., Inc. v. ARC Industries,*

10

*Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976). Appellant must demonstrate: (1) a meritorious claim or defense to raise if relief is granted; (2) entitled to relief under one of the subsections of Civ.R. 60(B); and (3) the motion is made within a reasonable time and, where the grounds for relief are Civ.R. 60(B)(1), (2), or (3), the motion is made not more than one year after the judgment was entered. *Id.* at paragraph two of the syllabus.

{¶38} "'Although a movant is not required to support its motion with evidentiary materials, the movant must do more than make bare allegations that he or she is entitled to relief.'" *Gregory v. Abdul Aal,* 11th Dist. Trumbull No. 2002-T-0176, 2004-Ohio-1703, ¶ 22, quoting *Kay v. Glassman*, 76 Ohio St.3d 18, 20, 1996–Ohio–430, 665 N.E.2d 1102 (1996).

{¶39} Civ.R. 60(B) exists in order for a party to seek relief from final orders due to allegations that cannot be raised on appeal. *State v. Brown,* 7th Dist. Mahoning No. 13 MA 172, 2014-Ohio-5824, ¶ 72. In this case, appellant has claimed he is entitled to relief under Civ.R. 60(B)(4) and (5), which provide for relief from an order when: "(4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from judgment."

{¶40} Civ.R. 60(B)(4) applies to judgments that are no longer equitable where those subjected to the judgment did not have the ability to foresee or control, such as a change in circumstances. *See Knapp v. Knapp*, 24 Ohio St.3d 141, 493 N.E.2d 1353 (1986). The Civ.R. 60(B)(5) "catch all" provision applies only when a more specific provision does not apply. *Caruso–Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 66, 5 OBR 120,

11

122, 448 N.E.2d 1365, 1367 (1983). "Civ.R. 60(B)(5) may be invoked only in extraordinary and unusual circumstances when the needs of justice demand." *Ohio Cas. Ins. Co. v. Valaitis*, 11th Dist. Lake No. 2011-L-062, 2012-Ohio-2561, ¶ 29.

**Death is Different:**

**{¶41}** Finally, the overriding principle, applicable to any death penalty case, is that "death is different." *Ford v. Wainwright*, 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (plurality opinion). In capital proceedings, courts must "aspire to a heightened standard of reliability." *Id.* "This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different." *Id.* "[T]he qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." *California v. Ramos*, 463 U.S. 992, 998-999, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983).

**Recasting motions under *State v. Schlee*:**

**{¶42}** In *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, the Ohio Supreme Court determined that a trial court may recast a Civ.R. 60(B) motion for relief from judgment as a petition for postconviction relief, even when the motion is unambiguously presented as a Civ.R. 60(B) motion. *Id.* at syllabus. Schlee was convicted of aggravated murder and sentenced to life imprisonment. *Id.* at ¶ 1. The court of appeals affirmed Schlee's direct appeal. *Id.* Schlee then filed two postconviction relief petitions, both of which the trial court denied. *Id.* at ¶ 2. "Having exhausted all appeals and postconviction-relief proceedings, Schlee filed a motion for a new trial, which was

12

granted." *Id.* at ¶ 3. Schlee was again convicted after his new trial and the court of appeals again affirmed his conviction on direct appeal. *Id.*

**{¶43}** Schlee then filed a Civ.R. 60(B) motion for relief from judgment arguing prosecutorial misconduct in both of his trials. *Id.* at ¶ 4. He sought reversal of his conviction and dismissal of the indictment with prejudice. *Id.* The trial court treated his Civ.R. 60(B) motion as a petition for postconviction relief and dismissed the petition as untimely. *Id.* at ¶ 5.

**{¶44}** Under Crim.R. 57(B), "[i]f no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules of criminal procedure, and shall look to the rules of civil procedure and to the applicable law if no rule of criminal procedure exists." Crim.R. 35 sets forth the procedure by which criminal defendants can file postconviction relief petitions.

**{¶45}** The Ohio Supreme Court said that court "may recast irregular motions into whatever category necessary to identify and establish the criteria by which the motion should be judged." *Schlee* at ¶ 12.

**{¶46}** Therefore, when a defendant in a criminal case files a Civ.R. 60(B) motion for relief from judgment, the court may recast that motion as a petition for postconviction relief where the Rules of Criminal Procedure already specifically prescribed the appropriate procedure. *Id.* at ¶ 12-13. The Court said that an irregular motion may meet the definition of a petition for postconviction relief where the motion is:

> (1) filed subsequent to [the defendant's] direct appeal, (2) claimed a denial of constitutional rights, (3) sought to render the judgment void, and (4) asked for vacation of the judgment and sentence.

*Id.* at ¶ 12, quoting *State v. Reynolds*, 79 Ohio St.3d 158, 160, 679 N.E.2d 1131 (1997).

13

Case No. 2023-T-0039

**{¶47}** The court said that the motion Schlee filed met the above criteria and therefore "could have been filed as petition for postconviction relief. Thus, it was not necessary to look to the Civil rules or other applicable law for guidance in the way Crim. R. 57(B) intends because a procedure 'specifically prescribed by rule' exists, i.e., Crim.R. 35." *Id.*

**{¶48}** For our purposes, it is important to note that in *Schlee*, the defendant received a new trial, was convicted, and did not file a petition for postconviction relief after his second trial. Therefore, the Ohio Supreme Court applied Crim.R. 57 to determine that "it was not necessary to look to the Civil rules or other applicable law for guidance in the way Crim. R. 57(B) intends because a procedure 'specifically prescribed by rule' exists, i.e., Crim.R. 35." *Id.* at ¶ 12.

**{¶49}** The threshold issue is whether the motion is an "irregular motion." When a motion is irregular, a court may recast it. However, where the motion is in conformity with the applicable rules of procedure, there is no need to recast it. While a postconviction relief petition is the exclusive remedy to bring a collateral challenge to the validity of a conviction or sentence, once brought, the Civil rules necessarily control that collateral challenge. *See State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, 137 N.E.3d 1151, ¶ 33, quoting R.C. 2953.21(K). ("[A] petition for postconviction relief is 'the *exclusive remedy* by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case.'" (Emphasis in quote.)).

**{¶50}** In *State v. Adams*, 12th Dist. Butler No. CA2010-12-321, 2011-Ohio-1721, the State appealed, asking the court to recast the defendant's Civ.R. 60(B) motion as a second postconviction relief motion pursuant to *Schlee. Id.* at ¶ 12. The defendant had

14

previously filed a postconviction relief petition, which the trial court dismissed as untimely. *Id.* at ¶ 3. The defendant filed a Civ.R. 60(B) motion for relief from judgment seeking the reversal of the dismissal of his postconviction relief petition. *Id.* The Twelfth District Court of Appeals determined that the defendant's Civ.R. 60(B) motion was "not a petition for postconviction relief" because "the Civ.R. 60(B) motion merely seeks to reverse the dismissal of his [postconviction relief] petition on the ground appellant was misinformed as to the correct filing date for the petition. * * * We will therefore consider appellant's Civ.R. 60(B) motion as a Civ.R. 60(B) motion." *Id.* at ¶ 15.

**{¶51}** The case before this Court is unlike *Schlee.* In 2003, appellant filed a petition for postconviction relief. A civil judgment was entered in relation to that petition. As noted above, a petition for postconviction relief is "a collateral civil attack on the judgment." *Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999). Thus, unlike *Schlee*, appellant need not resort to Crim.R. 57(B) to apply the Civil rules where no Criminal rule exists because his Civ.R. 60(B) motion is directed at the judgment entered in his civil postconviction relief petition. As in *Adams*, appellant's Civ.R. 60(B) motion is a motion seeking to revisit the judgment entered in his postconviction relief petition rather than directly seeking to vacate the judgment of conviction. We therefore consider his "Civ.R. 60(B) motion as a Civ.R. 60(B) motion." *Adams* at ¶ 15.

**{¶52}** Appellant's Civ.R. 60(B) motion is not an irregular motion. Instead, it is the appropriate motion to file to seek relief from the civil judgment that was entered on his petition for postconviction relief. There is no need to apply Crim.R. 57 because the Civil rules apply in the first instance. Although we determine that the trial court erred by

15

recasting appellant's Civ.R. 60(B) motion for relief from judgment, we do not render an opinion on whether appellant has satisfied the three-prong test set out in *GTE Automatic.*

**{¶53}** Accordingly, appellant's first assignment of error has merit.

**{¶54}** Appellant's second assignment of error states:

**{¶55}** "[2.] Even If Mr. Hill Is Not Entitled To Relief Under Rule 60(B), The Trial Court Erred In Concluding That Mr. Hill Failed to Meet The Requirements For A Second Post-Conviction Petition Under R.C. 2953.23. (T.d. 446, pp. 5-13)."

**{¶56}** As we have determined the trial court erred in recasting appellant's Civ.R. 60(B) motion, we need not address whether the trial court was correct in concluding appellant failed to meet the requirements for a second postconviction petition. Upon remand, the trial court is instructed to proceed from the point of error. *See State v. Goff,* 154 Ohio St.3d 218, 2018-Ohio-3763, 113 N.E.3d 490. Here, the error occurred when the trial court recast appellant's Civ.R. 60 (B) motion.

**{¶57}** For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is reversed, and this case is remanded for the trial court to consider appellant's Civ.R. 60(B) motion for relief from judgment, under the criteria and standards by which such a motion is to be judged.

MATT LYNCH, J.,

ROBERT J. PATTON, J.,

concur.

16

Case No. 2023-T-0039