[Cite as *State v. Lott*, 2026-Ohio-555.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 114992 |
| v. | : | |
| GREGORY LOTT, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 19, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-86-211002-ZA

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, *for appellee.*

Federal Defender Services of Eastern Tennessee, Inc., and Stephen A. Ferrell, Assistant Federal Defender, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} In 1986, Gregory Lott was convicted and sentenced to death for the murder of John McGrath. In 2002, in *Atkins v. Virginia*, 536 U.S. 304 (2002), the United State's Supreme Court held that imposing capital punishment upon

individuals who are intellectually disabled violates the Eighth Amendment to the U.S. Constitution's protections from cruel and unusual punishment. As a result of *Atkins*, Lott filed a successive petition for postconviction relief premised on the Ohio Supreme Court's decision in *State v. Lott*, 2002-Ohio-6625, that adopted the *Atkins* framework. Under *Lott*, an individual may be classified as intellectually disabled if they demonstrate "(1) significantly subaverage intellectual function, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." *Id*. at ¶ 12. *Lott* also established a rebuttable presumption that an individual is not intellectually disabled if the individual's IQ is over 70. *Id.*

{¶ 2} Lott's petition was denied, and an appeal was filed but ultimately dismissed. Then, in 2019, the Ohio Supreme Court overruled *Lott* because the medical diagnostic standards for identifying an intellectual disability for purposes of the death penalty had been updated since *Atkins*. *See State v. Ford,* 2019-Ohio-4539 (applying *Moore v. Texas*, 581 U.S. 1 (2017), and *Hall v. Florida*, 572 U.S. 701 (2014)). Under the new standard, a court must consider:

> (1) intellectual-functioning deficits (indicated by an IQ score approximately two standard deviations below the mean—i.e., a score of roughly 70 or lower when adjusted for the standard error of measurement, (2) significant adaptive deficits in any of the three adaptive-skill sets (conceptual, social, and practical), and (3) the onset of these deficits while the defendant was a minor.

*Ford* at ¶ 100. There is no dispute that based on these diagnostic standards, Lott is ineligible for the death penalty.

{¶ 3} As a result of *Ford*, Lott filed a Civ.R. 60(B) motion for relief from judgment from the trial court's decision that denied his successive petition for postconviction relief following *Lott*. Under Civ.R. 60(B)(4), a litigant may seek relief from judgment if the "prior judgment upon which it is based has been reversed or otherwise vacated."

{¶ 4} The trial court disagreed and denied Lott's Civ.R. 60(B) application, finding that Lott was circumventing the limitations on successive petitions that are governed by R.C. 2953.23 and finding that this section specifically provides an exception to the prohibition on filing successive petitions when there is a change in the United States Supreme Court's law as opposed to the Ohio Supreme Court. R.C. 2953.23(A)(1)(a) carves out an exception for postconviction-relief petitions if "the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right." *Ford* is an Ohio Supreme Court decision and therefore does not invoke the exception under R.C. 2953.23(A)(1)(a).

{¶ 5} Whether this is a proper use of Civ.R. 60(B)(4) is the issue that is before us as an assignment of error. Lott argues that because the Ohio Supreme Court's decision in *Ford* overruled *Lott*, subsection (B)(4) could be invoked for the relief that Lott seeks.

{¶ 6} As of the writing of this opinion, this identical issue is currently pending before the Ohio Supreme Court. *State v. Hill, 11/26/2024 Case Announcements, 2024-Ohio-5529* (Ohio Supreme Court No. 2024-0352, appeal

accepted for review). In *Hill*, the Eleventh District found that Civ.R. 60(B)(4) was a proper vehicle to challenge a capital sentence instead of the postconviction-relief statutes. *State v. Hill*, 2023-Ohio-4486 (11th Dist.). Lott asks that we follow *Hill*; the State argues that *Hill* will be reversed by the Ohio Supreme Court. We elect to follow *Hill*, finding that Lott's Civ.R. 60(B)(4) motion was procedurally proper.

{¶ 7} First, in *State v. Parker*, 2019-Ohio-3848, the Ohio Supreme Court held that Civ.R. 60(B)(5), the catchall provision of Civ.R. 60(B), cannot be used to circumvent the successive petition limitations under R.C. 2953.23(A)(1). Here, we find that *Parker* is inapplicable. *Parker*, though silent on the applicability of Civ.R. 60(B)(4), held that "a petition for postconviction relief is 'the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case.'" *Id.* at ¶ 33, quoting *State v. Schlee*, 2008-Ohio-545, ¶ 12, and R.C. 2953.21(K). We do not find that Lott's Civ.R. 60(B) filing constitutes a "successive postconviction petition" as contemplated in R.C. 2953.23. Lott seeks relief from the judgment denying postconviction relief; he does not collaterally attack the validity of the conviction or sentence. *Parker* held that Civ.R. 60(B)(5), the catchall provision, may not be used to skirt the mandates of R.C. 2953.23.

{¶ 8} In *Hill*, the Eleventh District explained that the Civ.R. 60(B) motion "is a motion seeking to revisit the judgment entered in his postconviction-relief petition rather than directly seeking to vacate the judgment of conviction." We agree and find that Lott's motion was not a successive postconviction-relief petition. Since Lott is seeking relief from a prior postconviction-relief judgment and not collaterally

challenging his conviction and sentence, we find that *Parker* is not controlling in the instant matter.

**{¶ 9}** Lott concedes that he attempted to appeal the most recent denial of his postconviction-relief petition but abandoned the appeal. The dissent invokes the *general* rule that Civ.R. 60(B) may not be used a substitute for appeal and other res judicata concerns. *Pilkington N. Am., Inc. v. Toledo Edison Co.*, 2015-Ohio-4797, ¶ 34, citing *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 16.

**{¶ 10}** Here, however, Lott is plainly not using Civ.R. 60(B) as a substitute for an appeal; at the time Lott abandoned the appeal denying his postconviction-relief petition, the test in *Ford* had not yet been decided and could not have been the subject of Lott's intended appeal. Because Lott could not have challenged his sentence pursuant to *Ford* at the time of his intended appeal, res judicata should not apply to Lott's detriment.

**{¶ 11}** It has long been recognized that "Civ.R. 60(B) exists to resolve injustices that are so great that they demand a departure from the strict constraints of res judicata." *Kuchta* at ¶ 16, citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944). It is difficult to imagine a greater injustice than allowing a death sentence to stand when even the State has conceded that Lott is no longer eligible for a death sentence. Accordingly, Lott's Civ.R. 60(B) motion is not barred as res judicata where the underlying reason for the motion did not exist at the time his appeal from the abandoned postconviction-relief petition was filed.

{¶ 12} To clarify, we are not holding that any reason not delineated in R.C. 2953.23 can be challenged via a Civ.R. 60(B) motion. We are narrowly holding that when R.C. 2953.23 is inapplicable, Civ.R. 60(B)(4) may be utilized in capital cases — cases where the offender is sentenced to the death penalty — where the State has conceded that the offender is now ineligible for the death penalty. This is the only just result in light of the State's stipulation that Lott is intellectually disabled for purposes of the death penalty. Civ.R. 60(B) was implemented for extraordinary matters, and we find that the circumstances herein are the "extraordinary matters" contemplated by Civ.R. 60(B). Accordingly, we find that a Civ.R. 60(B)(4) motion was a proper vehicle for Lott to challenge the denial of his previous postconviction-relief petition and we furthermore grant such relief based on the State's stipulation that Lott is intellectually disabled under the current letter of the law.

{¶ 13} Judgment reversed. This matter is remanded to the trial court with instructions to enter judgment granting Lott's Civ.R. 60(B) motion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., DISSENTING:

{¶ 14} Gregory Lott appeals the denial of his Civ.R. 60(B) motion to vacate the denial of a petition for postconviction relief, a final decision after Lott abandoned his then timely perfected appeal. This cases hinges on a basic question amplified by Ohio's broken capital-sentence system: Does Ohio have an exception to the general rule that criminal defendants cannot collaterally challenge their convictions based on changes in the substantive law outside of the postconviction-relief statute?[1] The trial court answered that question in the negative.

{¶ 15} The majority claims that the only "just" result in this case is to create an exception to R.C. 2953.23 to permit Lott a mechanism that is not available to any

_____

[1] This is not mere commentary. According to the Attorney General of Ohio, "Ohio's system of capital punishment is a huge, ponderous machine that burns enormous amounts of effort, time and money, all to no purpose. It is a system that fails to deliver on the promise of justice for victims and their families, while wasting millions of taxpayer dollars." Executive Summary, p.2, *2024 Capital Crimes State and Federal Cases*, available at https://www.OhioAttorneyGeneral.gov/2024CapitalCrimesReport (accessed Nov. 18, 2025) [perma.cc/2VCZ-25TA]. An inmate on death row "is more likely to die of suicide or natural causes than as a result of" enforcing the sanction imposed for the crime. *Id.* The length of time between imposition of the sentence and the continued inability to carry that sentence into execution is creating the procedural problems currently before this panel. Change is needed, but it cannot come from an intermediate appellate court.

other defendant under Ohio law. Because no intermediate court should declare policy for the State of Ohio, I respectfully dissent.

{¶ 16} Lott was convicted and sentenced to death in 1986 for murdering John McGrath. Lott has spent the last four decades successfully postponing his execution for various reasons that need not be elaborated upon. It is undisputed that at the time of his conviction, the death penalty was properly imposed under Ohio's then valid law.

{¶ 17} In 2002, 16 years after Lott's original conviction, the United States Supreme Court held that the execution of an intellectually disabled individual violates the Eighth Amendment's ban against cruel and unusual punishments. *Atkins v. Virginia*, 536 U.S. 304 (2002). Shortly thereafter, Lott filed a successive petition for postconviction relief under R.C. 2953.21, et seq., based on the Ohio Supreme Court's application of the *Atkins* standard in *State v. Lott*, 2002-Ohio-6625.[2] The *Lott* standard required a showing of "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18" and also created a rebuttable presumption of not being disabled if the offender's IQ was over 70. *Id.* at ¶ 12. The successive petition was denied, and although appealed, Lott failed to pursue the appeal and it was dismissed for failure to file the record. That decision was never challenged by Lott. The State contends that the

[2] Lott previously filed a petition for postconviction relief that was denied in 1993. *State v. Lott*, 1994 Ohio App. LEXIS 4965 (8th Dist. Nov. 3, 1994).

appeal was abandoned because Lott failed to produce any experts at the time able to declare him intellectually disabled based on the *Lott* test.

{¶ 18} In 2019, the Ohio Supreme Court overruled *Lott* based on new United States Supreme Court decisions applying "updated medical diagnostic standards." *See State v. Ford,* 2019-Ohio-4539 (applying *Moore v. Texas*, 581 U.S. 1 (2017), and *Hall v. Florida*, 572 U.S. 701 (2014)). The new test established by *Ford* is as follows:

> For purposes of eligibility for the death penalty, a court determining whether a defendant is intellectually disabled must consider three core elements: (1) intellectual-functioning deficits (indicated by an IQ score approximately two standard deviations below the mean—i.e., a score of roughly 70 or lower when adjusted for the standard error of measurement, (2) significant adaptive deficits in any of the three adaptive-skill sets (conceptual, social, and practical), and (3) the onset of these deficits while the defendant was a minor.

*Id.* at ¶ 100. As the record currently stands, the State concedes that Lott would meet the new standard and would then be ineligible for the death penalty should it have been imposed today. That is not the issue in this appeal.

{¶ 19} The problem Lott faces is the lack of any procedural mechanism he can validly invoke to reopen his 40-year-old conviction. This problem is not new in Ohio, but the concern is elevated in light of the nature of this case and Ohio's inability to carry out the death-penalty sentence. In any given 40-year period, substantive law undoubtedly changes.

{¶ 20} The Ohio Supreme Court issued a plurality opinion that is instructive. In *State v. Parker*, 2019-Ohio-3848, the defendant was sentenced to an eight-year, mandatory term of imprisonment based on a sentencing enhancement stemming

from his adjudication of juvenile delinquency predating the felony conviction. *Id.* at ¶ 4. Parker attempted to challenge the constitutionality of that enhancement to no avail. *Id.* at ¶ 5.

{¶ 21} The Ohio Supreme Court declined to review Parker's case in 2013. In 2016, in a different case with the same factual and procedural background, *State v. Hand*, 2016-Ohio-5504, the Ohio Supreme Court held that felony enhancements based on juvenile delinquency adjudications were "fundamentally unfair." *Parker* at ¶ 7. Following that decision, Parker attempted to vacate his conviction through a successive petition for postconviction relief applying that new decision, which was rejected based on the letter of R.C. 2953.23(A)(1). In order to file a successive petition for postconviction relief, the offender must, in pertinent part, demonstrate a decision by the United States Supreme Court recognizing a new constitutional right. *Id.* A newly decided state supreme court decision does not satisfy that requirement. *Id.* at ¶ 22. Parker's conviction was deemed final based on the trial court's lack of jurisdiction to vacate a final sentence, with the deciding vote concurring in judgment only with the plurality decision. *See generally id.*

{¶ 22} Importantly, the plurality rejected an argument that Civ.R. 60(B)(5) (the catchall provision of the rule for relief from judgments) could be used to circumvent the limitations on successive petitions for postconviction relief under R.C. 2953.23(A)(1). According to *Parker*, "a petition for postconviction relief is 'the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case.'" *Id.* at ¶ 33, quoting *State v. Schlee*,

2008-Ohio-545, ¶ 12, and R.C. 2953.21(K). The plurality's rejection of Civ.R. 60(B) as an alternative to a successive petition for postconviction relief weighs on the outcome in this case.

{¶ 23} With this background in mind, Lott filed a motion for relief under Civ.R. 60(B)(4) from the trial court's early 2000 decision denying his successive petition for postconviction relief filed after the *Atkins* decision. According to Lott, he is not attempting to use Civ.R. 60(B)(4) to reopen his conviction, but to reopen the civil postconviction proceeding he initiated in 2003, which in turn is the mechanism to challenge his otherwise final conviction.

{¶ 24} Under Civ.R. 60(B)(4), a litigant may seek relief from a final judgment if the "prior judgment upon which it is based has been reversed or otherwise vacated." According to Lott, the denial of his successive petition for postconviction relief in the early 2000s was based on the *Lott* decision, which was overruled by *Ford*. The trial court denied Lott's motion, determining that Lott was in effect attempting to circumvent the limitations on successive petitions for postconviction relief under R.C. 2953.23, limitations that Lott concedes preclude him from filing a successive petition because the decision upon which his argument relies is an Ohio Supreme Court decision. *See Parker*.

{¶ 25} Lott appealed that decision, claiming that

> [t]he trial court erred when it mischaracterized Appellant's Ohio R. Civ. P. 60(B) motion as a successive post-conviction petition because that motion did not present a new claim for relief, but rather asked the trial court to reconsider its earlier decision that Appellant is not intellectually disabled in light of the Ohio Supreme Court's decision to

overrule the standards for assessing intellectual disability announced in Appellant's own case.

That question is currently pending before the Ohio Supreme Court. *State v. Hill*, 2024-Ohio-5529. The appellate court in *Hill* faced an identical issue of whether the Ohio Supreme Court's change in the legal test for intellectually disabled offenders awaiting the sentence of death may be challenged through a Civ.R. 60(B) motion instead of the postconviction-relief statutes. The Eleventh District answered that question in the affirmative. *State v. Hill*, 2023-Ohio-4486 (11th Dist.).

{¶ 26} Lott's sole argument in this appeal is based on Civ.R. 57(B) and the notion that courts may look to civil rules when no applicable Rule of Criminal Procedure exists. He exclusively relies on the Eleventh District's *Hill* decision. The overarching problem with Lott's argument is that the legislature has created statutory procedure for vacating final convictions, and part of that procedure limits when and how a successive petition for postconviction relief can be filed. Under R.C. 2956.23(A)(1), an untimely successive petition can be filed based on new evidence or when "the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation." Civ.R. 60(B) cannot supplant what the legislature prohibits.

{¶ 27} Lott does not dispute that in order to file a successive petition for postconviction relief, the petitioner must meet the requirements of R.C. 2953.23(A)(1). He presents no explanation for why he did not pursue a successive

petition after *Moore*, 581 U.S. 1 (2017), and *Hall*, 572 U.S. 701 (2014), were released by the Supreme Court.

{¶ 28} According to Lott, his case differs from those offenders who have never filed a petition for postconviction relief, who must demonstrate an exception to the time limits under R.C. 2953.23(A)(1), because he is seeking relief from his successive petition and, therefore, R.C. 2953.23(A)(1) does not apply. In other words, Lott would read the successive petition requirements out of the statute and have those only apply to an untimely petition. The statute cannot be read in such a fashion. It provides two avenues to challenge a conviction after the original deadline expires: either through an untimely filing of the first petition, or through a successive petition, both of which require adherence to the statutory limitations.

{¶ 29} A successive petition is a petition filed after a previous petition was denied. Because Lott has twice availed himself of the postconviction statute, in order to attempt to vacate his conviction based on a new development in the law, he must meet the requirements of R.C. 2953.23(A)(1), as would any other convicted felon. Should relief be offered in his favor in this particular case, this court would have to create an exception applicable to any offender seeking to file a successive petition who does not meet the statutory requirements — enabling them to advance the same claims under Civ.R. 60(B) when not permitted to do so under R.C. 2953.23. We decline this approach based on binding authority stating that R.C. 2953.21, et seq., is the exclusive mechanism to vacate a final conviction. *Schlee*, 2008-Ohio-

545, at ¶ 12.  In order to file a successive petition for postconviction relief, the offender must establish the exceptions set forth in R.C. 2953.23(A)(1).

{¶ 30} In *Parker*, the plurality rejected the notion that Civ.R. 60(B)(5) could be used to circumvent the successive petition requirements.  That same reasoning applies to Civ.R. 60(B)(4).  Permitting an offender to successfully file any Civ.R. 60(B) motion to vacate the final conviction when a successive petition for postconviction relief is not an available mechanism, because the statutory requirements are not met, would simply render the statutory requirements a nullity.  Any offender wishing to file a successive petition, necessarily meaning a previous petition was denied, would simply file a Civ.R. 60(B) motion to vacate the previous decision without regard to the successive petition requirements.

{¶ 31} It is wholly within the legislative prerogative to create exceptions to R.C. 2953.23(A)(1) should those be necessary in death-penalty cases.  Absent those statutory exceptions to the filing of successive petitions, it is not for an intermediate appellate court to create new substantive rights to challenge decades-old convictions when the legislature has foreclosed that possibility.

{¶ 32} It must also be acknowledged that the procedural history of this particular case makes it a poor candidate to expand the law in Lott's favor regardless of the above conclusion.  Even if we considered Lott's argument regarding the applicability of Civ.R. 60(B), the civil standard precludes his obtaining relief.  Lott concedes that he voluntarily abandoned his appeal of the early 2003 decision denying his then successive petition for postconviction relief.  Under the general civil

standard for relief from a final judgment, he cannot now avail himself of Civ.R. 60. It has long been held that Civ.R. 60(B) cannot be used as a substitute for appeal. *Pilkington N. Am., Inc. v. Toledo Edison Co.*, 2015-Ohio-4797, ¶ 34, citing *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 16, and *Harris v. Anderson*, 2006-Ohio-1934, ¶ 8-9. Failing to appeal the trial court's decision precludes the losing party from attempting to vacate that decision through Civ.R. 60(B). *MTGLQ Investors, L.P. v. McKind*, 2024-Ohio-5848, ¶ 31 (6th Dist.), citing *Kuchta*, at ¶ 16. Even if we were inclined to accept Lott's argument and follow *Hill*, the procedural posture of this particular case would require an arbitrary exception (applying Civ.R. 60(B) contrary to the R.C. 2953.23 requirements for successive petitions for postconviction relief) built on a second exception (using Civ.R. 60(B) as a substitute for an abandoned appeal) to achieve the desired result. That type of result-oriented relief is not for an intermediate appellate court to provide.

{¶ 33} I acknowledge the harshness of this result being proposed, but Lott is asking for a general rule permitting the use of Civ.R. 60(B) in situations in which a convicted offender cannot avail themselves of the exception to the prohibition against successive petitions for postconviction relief established under R.C. 2953.23. The legislature made a policy decision establishing the limits of successive petitions for postconviction relief. Those policy decisions should not be overridden by judicially created exceptions established by an appellate court.

{¶ 34} For those reasons, I respectfully dissent and would affirm the decision of the trial court and, thereby, create a conflict with the Eleventh District's decision.