RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0272P (6th Cir.)
File Name: 02a0272p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DANNY HILL,
     *Petitioner-Appellant,*

     *v.*

CARL ANDERSON, Warden,
     *Respondent-Appellee.*

No. 99-4317

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 96-00795—Paul R. Matia, Chief District Judge.

Argued: May 1, 2002

Decided and Filed: August 13, 2002

Before: MERRITT, MOORE, and CLAY, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Mark A. Vander Laan, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellant. Henry G. Appel, ATTORNEY GENERAL'S OFFICE OF OHIO, CAPITAL CRIMES SECTION, Columbus, Ohio, for Appellee. **ON BRIEF:** Mark A. Vander Laan, Christopher R. McDowell, Amanda L. Prebble, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellant. Henry G. Appel,

ATTORNEY GENERAL'S OFFICE OF OHIO, CAPITAL CRIMES SECTION, Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

MERRITT, Circuit Judge.  In this Ohio death penalty case, petitioner Danny Hill appeals from the district court's denial of a writ of habeas corpus following his murder conviction. Throughout his appeals, Hill has argued, among other things, that he is mentally retarded and that retardation prevented him from receiving a fair trial.  Before this Court, Hill also advanced the claim that executing the mentally retarded violates the Eighth Amendment's ban on cruel and unusual punishments, correctly anticipating that the Supreme Court would so hold in *Atkins v. Virginia*, 536 U.S. ___, 122 S.Ct. 2242 (June 20, 2002).  He has not presented this *Atkins* claim to the Ohio courts.  Hill's petition thus mixes an unexhausted claim with claims previously heard by state courts.  Because Hill's new claim should first be heard by a state court, we return this case to the district court with instructions that it remand Hill's *Atkins* claim to a state court and stay his remaining claims pending resolution of the retardation issue.

### I.  Facts

We briefly present the necessary facts, drawn primarily from the Ohio Supreme Court's detailed decision upholding Hill's conviction and sentencing on direct appeal.  *See State v. Hill*, 595 N.E.2d 884 (Ohio 1992), *cert. denied*, 507 U.S. 1007 (1993).

On Tuesday, September 10, 1985, in Warren, Ohio, twelve-year-old Raymond Fife left home on his bicycle at approximately 5:15 p.m. to visit a friend's home.  When he did not arrive by 6 p.m., a search began.  Searchers found him that evening in a field behind a local store.  The boy had been beaten, sexually assaulted, strangled, and burned.  He died two days later without regaining consciousness.

*Words without Meaning: The Constitution, Confessions, and Mentally Retarded Suspects*, 69 U. Chi. L. Rev. 495, 511-12 (2002) (noting that the retarded are "unusually susceptible to the perceived wishes of authority figures. . . ," have "a generalized desire to please . . . ," "are often unable to discern when they are in an adversarial situation . . . ," and "have difficulty distinguishing between the fact and the appearance of friendliness");  Welsh S. White, *What is an Involuntary Confession Now?*, 50 Rutgers L. Rev. 2001, 2044 (1998) (stating there is "ample support for [the] conclusion that mentally handicapped suspects are 'especially vulnerable to the pressures of accusatorial interrogation'." ).

In *Zarvela v. Artuz*, the Second Circuit faced a similar mixed petition problem.  *See* 254 F.3d 374, 380 (2001), *cert. denied*, 122 S.Ct. 506 (2001).  Crafting a solution consistent with the purposes of the Antiterrorism Act, the court remanded to the district court with instructions to dismiss the unexhausted claim and stay the exhausted claims, but conditioned the stay on the petitioner promptly seeking state remedies and, when the state remedies were exhausted, promptly returning to federal court.  *See id*. at 381.  *Zarvela* has been cited with approval by this Court.  *See Palmer v. Carlton*, 276 F.3d 777, 778 (6th Cir. 2002).

Here we adopt *Zarvela*'s approach and remand Hill's case to district court with instructions to dismiss his *Atkins* claim to be considered by state court and to stay his remaining claims pending exhaustion of state court remedies.  To ensure that Hill does not draw out his state court proceedings, we instruct the district court to condition the stay on Hill's seeking relief from a state court on his *Atkins* claim within 90 days of the date the mandate issues from this Court.

Accordingly, it is so ordered.

A confession is involuntary only if there is (1) police coercion or overreaching which (2) overbore the accused's will and (3) caused the confession. *See Colorado v. Connelly*, 479 U.S. 165-66 (1986); *United States v. Brown*, 66 F.3d 124, 126-27 (6th Cir. 1995) . When a suspect suffers from some mental incapacity, such as intoxication or retardation, and the incapacity is known to interrogating officers, a "lesser quantum of coercion" is necessary to call a confession into question. *United States v. Sablotny*, 21 F.3d 747, 751 (7th Cir. 1994); *see also Nickel v. Hannigan*, 97 F.3d 401, 410 (10th Cir. 1996).

According to the record, Hill first came to the attention of police when he inquired about a reward offered for information on Raymond Fife's death. Questioned twice, he consistently denied any involvement in the killing. Then his uncle was assigned to the case. After being brought to the station again and left alone with his uncle for a few minutes, Danny Hill made an abrupt about-face and confessed to involvement in the crime. In evaluating these events, Danny Hill's previous interactions with his uncle are important: twice before, when Hill was in police custody, his uncle struck him when he refused to talk. Even accepting his uncle's version of events, in which Detective Hill simply told Danny Hill he believed he was involved in the killing, this episode raises a serious question of coercion. That any officer had struck a suspect is troubling; of special concern here is that Danny Hill was struck by an officer who was also a close family member.

A suspect's "mental condition is surely relevant to an individual's susceptibility to police coercion." *Colorado v. Connelly*, 479 U.S. 157, 165 (1986). State courts, including the Ohio Supreme Court, have clearly stated that Hill is retarded. *See Hill*, 595 N.E.2d at 901. The retarded have, "by definition . . . diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others." *Atkins*, 122 S.Ct. at 2250. *See also* Morgan Cloud et al.,

That Thursday, eighteen-year-old Danny Hill appeared at the Warren police station to inquire about a reward offered for information about the assault. He told police he had seen a youth riding Fife's bike, but was unable to explain to police how he knew the bike was Fife's; he also appeared to know more about the crime than had been released to the public. When quizzed about a suspect in the crime, Tim Combs, Hill admitted he knew him and suggested that Combs committed the crime. Hill returned to the station the next day, received a *Miranda* warning although he was not in custody, and gave an additional statement. Later that day police discovered eyewitnesses who had seen both Combs and Hill near the scene of the crime at about the time Fife was attacked.

The next Monday, an additional officer was assigned to the case: Detective Morris Hill, Danny's uncle. Detective Hill had previously dealt with his nephew when Danny had been suspected of a crime. Two years earlier, Danny Hill was arrested for burglarizing his grandmother's (Detective Hill's mother's) home. According to Detective Hill, Danny's mother then asked him to "whup [Danny's] ass," and when Danny, then in police custody, claimed he had nothing to do with the burglary, Detective Hill "smacked him in the mouth." Detective Hill said he had struck Danny while he was in police custody "a couple of times."

After he was assigned to the Fife case, Detective Hill and another officer went to Danny Hill's home where he agreed to accompany them to the police station. At the station, Danny Hill was again Mirandized. Danny Hill was then left alone with his uncle for a few minutes. According to Detective Hill, he told Danny that he believed Danny had something to do with Fife's murder, and Danny began crying and admitted involvement in the crime. When the other officers returned, Danny Hill was again given his rights and then made two statements admitting that he witnessed the attack, though he insisted that Combs was the one who actually assaulted Fife. Hill did admit, though, that he stayed with Fife while Combs went to get lighter fluid, which Combs subsequently poured on Fife and set alight.

Danny Hill was subsequently charged with kidnaping, rape, aggravated arson, felonious sexual penetration, aggravated robbery, and aggravated murder with specifications. Waiving his right to a jury trial, Hill's case was heard by a three-judge panel. At trial, in addition to Hill's statements, significant eyewitness, circumstantial, and forensic evidence was offered linking him to the murder. The panel found Hill guilty of all charges except aggravated robbery. At a mitigation hearing, three defense expert witnesses testified that Hill had an IQ below 70, had been raised in a poor environment, and was a follower. After weighing aggravating and mitigating factors, the judges sentenced Hill to death despite his mental retardation.

## II. Analysis

In a habeas appeal, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *See Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002).

### A. Mental retardation and Atkins

In *Atkins*, the Supreme Court held at the end of its term that executing a mentally retarded individual violates the Eighth Amendment's ban on cruel and unusual punishments. *See* 122 S.Ct. at 2250. This holding applies retroactively; in *Penry v. Lynaugh*, when the question was last before it, the Court recognized that a constitutional rule barring execution of the retarded would fall outside *Teague v. Lane*'s ban on retroactive application of new constitutional rules because it placed the ability to execute the retarded "beyond the State's power." 492 U.S. 302, 330 (1989) (discussing *Teague*, 489 U.S. 299, 301-02 (1989)). Although *Atkins* barred the execution of the mentally retarded, it did not set down a procedure for determining whether an individual is sufficiently retarded to escape execution, leaving it to the states to develop "appropriate ways to enforce the constitutional restrictions" on executing the mentally retarded, just as they developed new safeguards to prevent execution of the insane following the Court's ruling in *Ford v. Wainwright*. *Atkins*, 122 S.Ct. at 2252 (citing *Ford*, 477

U.S. 399 (1986)). In *Atkins*, Virginia contended that the petitioner was not retarded, so the Court remanded his case to state court.

The Supreme Court's decision to return Atkins's case to state courts suggests that we should return Hill's Eighth Amendment retardation claim to the state for further proceedings. Here, as in *Atkins*, the state of Ohio has not formally conceded that the petitioner is retarded. Though Ohio courts reviewing his case have concluded that Danny Hill is retarded, *see, e.g.*, *Hill*, 595 N.E.2d at 901, and voluminous expert testimony supported this conclusion, J.A. at 3264-67, 3332-35, 3379-80, Hill's retardation claim has not been exhausted or conceded. Ohio should have the opportunity to develop its own procedures for determining whether a particular claimant is retarded and ineligible for death. We note that, when discussing retardation in *Atkins*, the Supreme Court cited with approval psychologists' and psychiatrists' "clinical definitions of mental retardation," and presumably expected that states will adhere to these clinically accepted definitions when evaluating an individual's claim to be retarded. *See* 122 S.Ct. at 2245 n.3, 2250-2251.

### B. The mixed petition problem

Because Hill's Eighth Amendment mental retardation issue is raised for the first time in this federal habeas proceeding, and has not been raised in state court, it creates a so-called "mixed" petition. Under the Antiterrorism Act, we may not grant a petition containing unexhausted claims except in a narrow range of special circumstances, not present here, or unless the State explicitly waives the exhaustion requirement, which it has not done. *See* 28 U.S.C. § 2254(b).

We may deny a mixed petition on its merits, *see id.* § 2254(b)(2), but we will not do so here because the issue regarding the voluntariness of Hill's confession raises a serious question. "[A] confession cannot be used if it is involuntary." *United States v. Macklin*, 900 F.2d 948, 951 (6th Cir. 1990), *cert. denied*, 498 U.S. 840 (1990) (citing *United States v. Washington*, 431 U.S. 181, 186-87 (1977)).