*107 BOGGS, Circuit Judge,
dissenting.
In Coleman v. State, 341 S.W.3d 221 (Tenn.2011) — decided after oral argument in this case — the Tennessee Supreme Court construed a Tennessee statute prohibiting the execution of mentally retarded defendants under Tennessee law. The panel remands Black’s case to the district court in light of Coleman, reasoning that Coleman “elucidates Tennessee’s interpretation of Atkins’s legal standard.” See Maj. Op. at p. 92. A thorough reading of Coleman reveals no such elucidation. Coleman is purely a construction of a state statute that makes only fleeting references to Atkins. For this reason, I cannot join the panel, and respectfully dissent.
A
There are three major flaws with the panel’s opinion.
First, the panel contends that it is appropriate to “look to state law that has been issued after the defendant’s state conviction has become final in order to determine how Atkins applies to the specific case at hand.” This position, while correct in the abstract, is not supported by the two precedents cited. In Hill v. Anderson, this court remanded Hill’s Atkins habeas claim to the Ohio state courts — in which Hill had not yet exhausted his “retardation claim” — to allow the courts to “develop [their] own procedures for determining whether a particular claimant is retarded and ineligible for death.” 300 F.3d 679, 682 (6th Cir.2002). Hill, decided in the uncertain aftermath of Atkins, has no bearing on this case. Black has had ample opportunity to exhaust and has exhausted his Atkins claim in state courts, and in federal courts. To the extent that Coleman has any bearing on Black’s case, the appropriate forum to re-litigate such a claim is in state court, not on remand to a federal district court.
The other ease cited, Wiley v. Epps, is readily distinguishable, in light of the Fifth Circuit’s finding that AEDPA deference was unwarranted where the “case was intertwined with the alleged due process violation by the state court’s failure to conduct a hearing.” 625 F.3d 199, 208 (5th Cir.2010). “Wiley was convicted before Atkins was decided” and on collateral review was not offered an evidentiary hearing to develop his claim of mental retardation. Ibid. As such, a remand was appropriate to afford Wiley an opportunity to state his Atkins claim. Id. at 213 (“[I]t was an unreasonable application of clearly established federal law for the Mississippi Supreme Court to deny Wiley’s Atkins claim without a hearing, and the district court correctly concluded that it was not bound to afford the state court’s decision deference.”). In contrast, as the majority notes, the state trial court “held an evidentiary hearing, but ultimately determined that Black [was] not mentally retarded under the Atkins standard.” See Maj. Op. at p. 86. Black has had numerous opportunities to argue his Atkins claim, and the state court’s determination is entitled to deference. Coleman, a creature of state law, does nothing to implicate his Atkins claim.
B
Second, the state law in question, enacted in 1990, has nothing to do with Atkins and its resulting jurisprudence, other than the fact that it relates to the execution of mentally retarded individuals. TenmCode Ann. § 39-13-203(a) prohibits the execution of an individual with an “intellectual disability” specifically defined as “[significantly subaverage general intellectual functioning as evidenced by a functional intelligence quotient (I.Q.) of seventy (70) or below.” The Tennessee Supreme Court announced in Van Tran v. State that the *108 execution of mentally retarded individuals also violated the Tennessee Constitution. 66 S.W.3d 790, 812 (Tenn.2001). Noteworthy for our purposes, Van Tran was decided seven months before the Supreme Court’s opinion in Atkins v. Virginia, but after certiorari was granted. Id. at 800. The Coleman opinion itself discusses Atkins only in the background section. The Tennessee Supreme Court’s analysis in Coleman — which contains only fleeting references to journal articles about Atkins— focuses on “construing [the state] statute,” Coleman, at 241. Coleman offers no “elucidation” of Atkins.
C
Third, and perhaps most importantly, even assuming that Coleman explicated Atkins, such analysis would be of no moment for purposes of AEDPA. Although “Atkins reserved for the states the task of developing appropriate ways to enforce the constitutional restriction,” In re Bowling, 422 F.3d 434, 436-37 (6th Cir.2005), the majority is incorrect in reasoning that Coleman “enforce[s] the constitutional restriction.” The Tennessee Supreme Court in Van Tran went out of its way to stress that its opinion — issued seven months before Atkins — was grounded on state, and not federal constitutional law. 66 S.W.3d at 801 (“Accordingly, although we will refer to relevant analysis under the Eighth Amendment, all of our opinions and conclusions with respect to the execution of mentally retarded individuals — an issue of first impression for this Court — are separately and independently based upon article I, § 16 of the Tennessee Constitution.”). Indeed, even if the Tennessee Supreme Court did rely on an interpretation of Atkins, it could not alter or elucidate the relevant AEDPA inquiry — which is what was “clearly established federal law” as of 2006, when the “TCCA affirmed” the state trial court’s decision that “Black is not mentally retarded under the Atkins standard.” See Maj. Op. at p. 86.
The majority’s remand cannot be reconciled with this court’s limited role under AEDPA to grant relief only for an “unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1) (emphasis added). See Bobby v. Dixon, — U.S. -, 132 S.Ct. 26, 181 L.Ed.2d 328 (2011) (per curiam). Coleman decided how a Tennessee state statute should apply to a Tennessee state court opinion decided under the Tennessee state Constitution. This case was not decided based on the Federal Constitution, and does not implicate Black’s federal habeas challenge. AEDPA forecloses consideration of this state court precedent as a ground for relief.
I find no possibility that a federal court’s consideration of Coleman could afford Black any remedy. Remand is unnecessary, inappropriate, and flatly contrary to federal law. Just as Coleman did, Black can seek relief under this new precedent in Tennessee state courts “in the form of a motion to re-open his prior post-conviction petition.” Coleman, 341 S.W.3d at 226.
Because Black’s remedy does not lie in the federal courts, I respectfully dissent.