**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Hill*, Slip Opinion No. 2026-Ohio-1427.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1427

THE STATE OF OHIO, APPELLANT, *v*. HILL, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Hill*, Slip Opinion No. 2026-Ohio-1427.]**

*Criminal law—R.C. 2953.21 provides the exclusive mechanism by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case—A capital defendant may not collaterally challenge a prior judgment denying his petition for postconviction relief by filing a motion under Civ.R. 60(B)—Court of appeals' judgment reversed and cause remanded.*

(No. 2024-0352—Submitted October 29, 2025—Decided April 23, 2026.)

APPEAL from the Court of Appeals for Trumbull County,
No. 2023-T-0039, 2023-Ohio-4486.

_____

KENNEDY, C.J., authored the opinion of the court, which FISCHER, DEWINE, HAWKINS, and SHANAHAN, JJ., joined. BRUNNER, J., concurred, with an opinion. DETERS, J., concurred, with an opinion.

**KENNEDY, C.J.**

{¶ 1} This discretionary appeal from a judgment of the Eleventh District Court of Appeals presents the question whether a capital defendant may collaterally challenge a prior judgment denying his petition for postconviction relief by filing a motion under Civ.R. 60(B). The answer is no.

{¶ 2} We hold that R.C. 2953.21 provides the exclusive mechanism "by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case," R.C. 2953.21(K). The Ohio Rules of Civil Procedure do not apply to special statutory proceedings when the rules "by their nature [are] clearly inapplicable." Civ.R. 1(C)(8). Because the General Assembly has prescribed a specific statutory mechanism by which a person may request postconviction relief and designated it as the exclusive remedy available, a petition for postconviction relief may not be reopened by filing a Civ.R. 60(B) motion.

{¶ 3} We therefore reverse the judgment of the Eleventh District and remand the matter to that court for consideration of Hill's remaining assignment of error.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 4} In 1986, appellee, Danny Hill, was convicted of aggravated arson, kidnapping, rape, felonious sexual penetration, and aggravated murder with a capital specification arising out of the torture and murder of 12-year-old Raymond Fife. *See State v. Hill*, 1992-Ohio-43 ("*Hill I*"). Since then, Hill has repeatedly challenged his convictions and death sentence.

{¶ 5} This court decided his appeal as of right in 1992. *Id.* Hill presented 25 propositions of law, raising a range of alleged constitutional and procedural violations, but the court found none meritorious. *Id.* We then reviewed the aggravating and mitigating factors and noted that Hill's intellectual disability was "a possible mitigating factor," *id.* at ¶ 129. We also noted that according to the

testimony of two psychologists, Hill's full-scale IQ score was either 64 or 68 and his moral development was comparable to that of a two-year-old's. *Id.* at ¶ 125-126. However, we found only "a very tenuous relationship between the acts [Hill] committed and his level of" intellectual disability because the evidence showed that Hill "knew right from wrong." *Id.* at ¶ 130. We affirmed Hill's convictions and sentences. *Id.* at ¶ 133-135.

{¶ 6} In 1996, Hill filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio, arguing, among other things, that because of his intellectual disability, he had been prevented from receiving a fair trial. The district court denied his petition in 1999, *Hill v. Anderson*, 1999 U.S. Dist. LEXIS 23332 (N.D.Ohio Sept. 29, 1999), and Hill appealed to the United States Court of Appeals for the Sixth Circuit. In his appeal, Hill added to his claim that because of his intellectual disability, the Eighth Amendment to the United States Constitution bars his execution, *see Hill v. Anderson*, 300 F.3d 679, 680 (6th Cir. 2002) ("*Hill II*"). While Hill's appeal was pending in the Sixth Circuit, the United States Supreme Court decided *Atkins v. Virginia*, 536 U.S. 304 (2002), holding that the Eighth Amendment's clause prohibiting cruel and unusual punishment prohibits the execution of intellectually disabled people. Shortly after *Atkins* was decided, this court held that to prove intellectual disability, a defendant must demonstrate "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." *State v. Lott*, 2002-Ohio-6625, ¶ 12. Because Hill had not yet presented his *Atkins* claim in the state courts, the Sixth Circuit returned the case to the federal district court "with instructions that it remand Hill's *Atkins* claim to a state court and stay his remaining claims pending resolution of" that issue. *Hill II* at 680.

{¶ 7} Hill then filed a petition for postconviction relief under R.C. 2953.21 in the Trumbull County Court of Common Pleas, arguing that his intellectual

disability made him ineligible for the death penalty under *Atkins* and *Lott*. *See State v. Hill*, 2008-Ohio-3509, ¶ 14 (11th Dist.). Both the expert for the State of Ohio and the expert for the trial court determined that Hill was not intellectually disabled, while Hill's expert determined that Hill had "mild" intellectual disability. *See id.* at ¶ 16, 18. Based on these determinations and others, in 2006, the trial court denied Hill's petition for postconviction relief, finding that Hill had proved the first prong of the *Lott* test but had failed to prove the second and third prongs. *See id.* at ¶ 76, 99-100. The Eleventh District affirmed, *id.* at ¶ 108, and this court declined to accept Hill's jurisdictional appeal, 2009-Ohio-4233. Once the *Atkins*/*Lott* issue was decided in the state court, the federal district court reopened the habeas proceeding to address the claims that it had stayed, and it denied Hill's petition. *Hill v. Anderson*, 2014 WL 2890416 (N.D.Ohio June 25, 2014).

{¶ 8} Around the same time, the United States Supreme Court decided *Hall v. Florida*, 572 U.S. 701 (2014), and *Moore v. Texas*, 581 U.S. 1 (2017), holding that the Florida and Texas courts had applied incorrect tests for determining a defendant's intellectual disability in the context of state-court death-penalty proceedings. In response to those decisions, this court held that the test articulated in *Lott* was "the wrong standard" for determining a defendant's intellectual disability. *State v. Ford*, 2019-Ohio-4539, ¶ 95; *see also id.* at ¶ 94, 97, 100. The new test requires courts to consider:

> (1) intellectual-functioning deficits (indicated by an IQ score approximately two standard deviations below the mean—i.e., a score of roughly 70 or lower when adjusted for the standard error of measurement), (2) significant adaptive deficits in any of the three adaptive-skill sets (conceptual, social, and practical), and (3) the onset of these deficits while the defendant was a minor.

4

*Id.* at ¶ 100.

{¶ 9} Hill appealed the federal district court's judgment denying his habeas petition to the Sixth Circuit, and that court reversed, holding that in affirming the trial court's denial of Hill's petition for postconviction relief, the state court of appeals had "unreasonabl[y] determin[ed]" that Hill was not intellectually disabled. *Hill v. Anderson*, 881 F.3d 483, 487 (6th Cir. 2018). The State appealed the Sixth Circuit's judgment to the United States Supreme Court. The Supreme Court vacated the Sixth Circuit's judgment, finding that that court had erred in relying extensively on *Moore*, because *Moore* "was not handed down until long after the state-court decisions" in Hill's case; it remanded the case to the Sixth Circuit with instructions to evaluate Hill's claim regarding his intellectual disability "based solely on holdings of [the United States Supreme Court] that were clearly established at the relevant time." *Shoop v. Hill*, 586 U.S. 45, 46 (2019) (per curiam).

{¶ 10} On remand, a three-judge panel of the Sixth Circuit granted Hill relief in habeas corpus on his *Atkins* claim with respect to his death sentence. *Hill v. Anderson*, 960 F.3d 260, 265 (6th Cir. 2020) (per curiam). The warden filed a request for rehearing en banc, which the Sixth Circuit granted. *Hill v. Shoop*, 11 F.4th 373, 383 (6th Cir. 2021). Under the Sixth Circuit's local rules, granting the warden's request vacated the previous opinion and restored the case on the docket as a pending appeal. *See* 6 Cir.R. 40(d). The Sixth Circuit, sitting en banc, voted nine to seven to affirm the district court's denial of habeas relief, holding that "the Ohio Court of Appeals did not act unreasonably in relying on the opinions of . . . trained medical professionals who had full access to the extensive record in this case," *Hill v. Shoop* at 394. The United States Supreme Court declined to review that decision, with three justices dissenting. *Hill v. Shoop*, 597 U.S. __, 142 S.Ct. 2579 (2022) (Mem.).

{¶ 11} Hill subsequently filed a motion in the Trumbull County Court of Common Pleas under Civ.R. 60(B)(4) and (5), seeking relief from the trial court's 2006 judgment denying his petition for postconviction relief that was based on *Atkins*. Civ.R. 60(B)(4) and (5) allow a court, on motion, to "relieve a party . . . from a final judgment" if "it is no longer equitable that the judgment should have prospective application" or for "any other reason justifying relief from the judgment." Hill argued that (1) the trial court's judgment denying his petition for postconviction relief was based on the incorrect standard for determining intellectual disability set forth in *Lott* and (2) his petition should be reconsidered under the standard set forth in *Ford*, 2019-Ohio-4539. He included a January 2022 affidavit from the psychologist who had served as the State's expert during the earlier proceedings on his *Atkins* claim. In the affidavit, the expert attested that he had reviewed his previous reports and now "concluded [that Hill] is intellectually disabled and has been his entire life."

{¶ 12} The trial court, citing *State v. Schlee*, 2008-Ohio-545, recast Hill's Civ.R. 60(B) motion as a petition for postconviction relief and then determined that the petition was untimely and successive. It held that Hill had not met the requirements in R.C. 2953.23(A) for filing an untimely or successive petition for postconviction relief, because he had "failed to demonstrate that he was unavoidably prevented from the discovery of the historical facts of the case that occurred up to and including the time of conviction." The trial court stated that the expert's changed opinion regarding Hill's intellectual disability "is not the type of historical fact contemplated" by the statute.

{¶ 13} Hill appealed to the Eleventh District, asserting two assignments of error. In the first assignment of error, he argued that the trial court erred in holding that Civ.R. 60(B) is an improper mechanism for seeking relief from a prior postconviction judgment. *See* 2023-Ohio-4486, ¶ 31 (11th Dist.). And in the second assignment of error, Hill argued that even if he is not entitled to relief under

Civ.R. 60(B), the trial court erred in concluding that he failed to meet the requirements for a second postconviction petition under R.C. 2953.23. *See id.* at ¶ 55.

{¶ 14} The Eleventh District reversed the trial court's judgment, holding that Hill's Civ.R. 60(B) motion was not an "irregular" motion but instead was "the appropriate motion to file to seek relief from the civil judgment that was entered on his petition for postconviction relief." *Id.* at ¶ 52. It remanded the case to the trial court for a determination on Hill's Civ.R. 60(B) motion. *Id.* It declined to reach Hill's second assignment of error. *Id.* at ¶ 56.

{¶ 15} The State appealed to this court, and we agreed to consider the following proposition of law:

> A successive post-conviction petition that points to new evidence or a change in law must be brought according to R.C. 2953.23(A), and may not be filed as a Civil Rule 60 motion for relief from an adverse judgment on a prior post-conviction petition.

*See* 2024-Ohio-5529.

## II. LAW AND ANALYSIS

{¶ 16} Civ.R. 60(B)(5) allows a court to "relieve a party . . . from a final judgment" in the case of "any . . . reason justifying relief from the judgment." However, the Rules of Civil Procedure are not universally applicable.

{¶ 17} The applicability of the Civil Rules is limited by Civ.R. 1(C):

> These rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure (1) upon appeal to review any judgment, order or ruling, (2) in the appropriation of property, (3) in forcible entry and detainer, (4) in small claims

matters under Chapter 1925 of the Revised Code, (5) in uniform reciprocal support actions, (6) in the commitment of the mentally ill, (7) in adoption proceedings under Chapter 3107 of the Revised Code, (8) in all other special statutory proceedings; provided, that where any statute provides for procedure by a general or specific reference to all the statutes governing procedure in civil actions such procedure shall be in accordance with these rules.

{¶ 18} Therefore, "[t]here are two considerations in determining whether the Civil Rules do not apply: whether the procedural statute governs a special statutory proceeding and whether that statute renders the civil rule at issue 'clearly inapplicable.'" *Ferguson v. State*, 2017-Ohio-7844, ¶ 21.

## A. Special Statutory Proceedings

{¶ 19} A special statutory proceeding is one that did not exist at common law or in equity but was established by special legislation. *See Ferguson* at ¶ 23, citing *Myers v. Toledo*, 2006-Ohio-4353, ¶ 15. Postconviction-relief proceedings clearly meet this definition. The right to file petitions for postconviction relief was created by statute in 1965. R.C. 2953.21, Am.S.B. No. 383, 131 Ohio Laws 684, 1610 (effective July 21, 1965). "[A] postconviction proceeding is a collateral civil attack on the judgment . . . [and] the 'right to file a postconviction petition is a statutory right, not a constitutional right.'" *State v. Apanovitch*, 2018-Ohio-4744, ¶ 35, quoting *State v. Broom*, 2016-Ohio-1028, ¶ 28. Because postconviction-relief proceedings are special statutory proceedings, the only remaining question is whether Civ.R. 60(B) is clearly inapplicable to those proceedings.

## B. Civ.R. 60(B) Is Clearly Inapplicable to Postconviction-Relief Proceedings

{¶ 20} "A civil rule is clearly inapplicable '"only when [its] use will alter the basic statutory purpose for which the specific procedure was originally provided."'" (Bracketed text added in *Ferguson*.) *Ferguson* at ¶ 24, quoting *Price*

*v. Westinghouse Elec. Corp.*, 70 Ohio St.2d 131, 133 (1982), quoting *State ex rel. Millington v. Weir*, 60 Ohio App.2d 348, 349 (10th Dist. 1978).

{¶ 21} Ohio's statute authorizing petitions for postconviction relief, R.C. 2953.21, "was enacted in 1965 in response to the United States Supreme Court order that states must provide their prisoners with some 'clearly defined method by which they may raise claims of denial of federal rights.'" *State v. Calhoun*, 1999-Ohio-102, ¶ 9, quoting *Young v. Ragen*, 337 U.S. 235, 239 (1949).

{¶ 22} R.C. 2953.21(A)(1)(a) provides, in relevant part:

A person in any of the following categories may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief:

(i) Any person who has been convicted of a criminal offense . . . and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States;

(ii) Any person who has been convicted of a criminal offense and sentenced to death and who claims that there was a denial or infringement of the person's rights under either of those Constitutions that creates a reasonable probability of an altered verdict . . . .

{¶ 23} And R.C. 2953.23(A) sets out two circumstances under which a court may "entertain" a second or successive petition for postconviction relief. The first of those, which is applicable here, requires that both of the following criteria be met:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period described in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

{¶ 24} From the text of these statutes and the context surrounding R.C. 2953.21's enactment, it is clear that the purpose of the statutes is to define the method by which people convicted of crimes "may raise claims of denial of federal rights," *Young*, 337 U.S. at 239. The prescribed method describes not only how a person might bring his first petition but also the circumstances under which a court may entertain successive or delayed collateral attacks on a conviction or sentence. And R.C. 2953.21 states, without reservation, that it provides "the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case . . . *or the validity of a related order of disposition*." (Emphasis added.) R.C. 2953.21(K). Allowing what amounts to a successive request for postconviction relief to be brought by filing a Civ.R. 60(B) motion would contravene the statutory purpose of having one remedy for such

cases. Therefore, the Civil Rules are manifestly inapplicable to postconviction-relief proceedings.

### III. CONCLUSION

{¶ 25} Postconviction-relief proceedings are special statutory proceedings to which the Civil Rules are inapplicable, so Hill may not challenge the judgment denying his petition for postconviction relief by filing a motion under Civ.R. 60(B). Instead, successive petitions for postconviction relief must conform to the requirements of R.C. 2953.21 and 2953.23.

{¶ 26} Accordingly, we reverse the judgment of the Eleventh District Court of Appeals and remand the case to that court for consideration of Hill's remaining assignment of error.

Judgment reversed

and cause remanded.

_____

**BRUNNER, J., concurring.**

{¶ 27} I agree with the majority opinion, which closes any loophole that may exist in the methods prescribed in R.C. 2953.21 for raising postconviction claims and the procedure under Civ.R. 60(B) that permits a party to move for relief from a final judgment under certain circumstances. A request to vacate a criminal conviction or sentence is governed by R.C. 2953.21. *See* R.C. 2953.21(K) ("the remedy set forth in this section is the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case").

{¶ 28} Technically, in filing his motion under Civ.R. 60(B) in the trial court, appellee, Danny Hill, did not seek to *directly* challenge the validity of his sentence. However, the relief Hill sought—to vacate the prior judgment entry denying his initial motion for postconviction relief—if granted, would have returned him to the position he was in when he initially requested that his death sentence be vacated by

using the postconviction procedure to challenge the validity of his sentence. Because Hill was seeking to have the trial court reconsider the validity of his death sentence based on new evidence and a newly recognized legal standard, his Civ.R. 60(B) motion was properly characterized by the trial court as a successive postconviction petition, which is governed by R.C. 2953.23.

{¶ 29} I write separately to highlight the context of Hill's claim and to emphasize the responsibility this court has in ensuring integrity in applying Ohio's capital-punishment laws, *see State v. Wogenstahl*, 2024-Ohio-4714, ¶ 45 (Brunner, J., dissenting), quoting *State v. Lawson*, 2021-Ohio-3566, ¶ 198 (Brunner, J., dissenting) ("It is this court's duty to ensure that any death sentence imposed in this State is 'subjected to a reliable, deliberate, and rigorous constitutional review' . . . .").

{¶ 30} The Eighth Amendment to the United States Constitution prohibits states from executing persons who are intellectually disabled. *Atkins v. Virginia*, 536 U.S. 304 (2002). To stay within constitutional bounds in implementing the death penalty, states must employ standards based on "established medical practice" to determine whether a person is intellectually disabled. *Hall v. Florida*, 572 U.S. 701, 711-712 (2014). The United States Supreme Court has cautioned that even "[m]ild levels of intellectual disability . . . remain intellectual disabilities," *Moore v. Texas*, 581 U.S. 1, 18 (2017), and that states may not execute anyone who falls into "'the *entire category* of [intellectually disabled] offenders'" (emphasis and bracketed text added in *Moore*), *id.*, quoting *Roper v. Simmons*, 543 U.S. 551, 563 (2005).

{¶ 31} Therefore, the process of determining whether a capital defendant is intellectually disabled must be constitutionally rigorous and thorough, and the procedural pathway for a capital defendant to seek such a determination must be clear and accessible. In *State v. Lott*, this court determined that the postconviction procedures set forth in R.C. 2953.21 et seq. "provide a suitable statutory framework

for reviewing [a defendant's] *Atkins* claim." *Lott*, 2002-Ohio-6625, ¶ 13. But here, appellant, the State of Ohio, asks for application of this statutory framework in a manner that would prevent Hill from having his *Atkins* claim properly adjudicated. In its merit brief, the State argues that R.C. 2953.21(A)(1)(k) prohibits Hill from raising "the exact same [*Atkins*] claim" that he unsuccessfully raised in 2003.

**{¶ 32}** That the State seeks to foreclose Hill's ability to have his claim that he is intellectually disabled reviewed under the current legal standard is extremely concerning, especially given the substantial evidence that supports Hill's claim, *see Hill v. Shoop*, 597 U.S. __, 142 S.Ct. 2579 (2022) (Mem.) (Sotomayor, J., dissenting).

**{¶ 33}** On habeas corpus review, a three-judge panel of the United States Court of Appeals for the Sixth Circuit found that Hill had been sentenced to death "despite his mental retardation." *Hill v. Anderson*, 300 F.3d 679, 681 (6th Cir. 2002). Many years later, again on habeas review, the same three-judge panel said that the evidence that Hill is intellectually disabled is "overwhelming." *Hill v. Anderson*, 960 F.3d 260, 281 (6th Cir. 2020), *vacated by Hill v. Shoop*, 11 F.4th 373 (6th Cir. 2021). On en banc review, seven dissenting judges of the Sixth Circuit observed that "[n]o person looking at [the] record could reasonably deny that Hill is intellectually disabled under *Atkins*." *Shoop*, 11 F.4th at 400 (Moore, J., dissenting). And in her opinion dissenting from the United States Supreme Court's denial of certiorari,[1] Justice Sotomayor, joined by two other justices, explained the evidence of Hill's intellectual disability as follows:

---

1. In denying certiorari, *Shoop*, 597 U.S. __, 142 S.Ct. 2579, the United States Supreme Court declined to review Hill's initial *Atkins* claim, *see Shoop*, 11 F.4th 373. Hill was seeking the Court's review of the nine-to-seven decision of the Sixth Circuit sitting en banc that determined that based on "Ohio law at the time of Hill's *Atkins* hearing," *id*. at 386, the state appellate court properly denied Hill's *Atkins* claim, *id*. at 395. The initial three-judge panel of the Sixth Circuit had held that Hill is intellectually disabled, and it had ordered the district court to issue a writ of habeas corpus with respect to Hill's death sentence, noting that "the Ohio courts [had] avoided giving serious consideration to past evidence of Hill's intellectual disability." *Anderson*, 960 F.3d at 265, *vacated by Shoop*, 11 F.4th 373.

Before Hill filed his state petition for postconviction relief, he had been diagnosed with intellectual disabilities approximately 10 times, beginning at age six. He scored 70 or below on every IQ test he took during his school years. The record before the state courts also revealed significant limitations in Hill's functional academics, self-care, social skills, and self-direction. He could not sign his own name, never lived independently, was "functionally illiterate" at school and in prison, could not read or write above a third-grade level, and could not perform a job without substantial guidance from supervisors. [*Shoop*, 11 F.4th] at 407 [Moore, J., dissenting]. He has never been able to take care of his own hygiene independently; even in the rigidly organized environment of prison, he will not shower without reminders. All three medical professionals who testified at the mitigation phase of Hill's trial concluded that he was within the range of intellectual disability, *see State v. Hill*, 177 Ohio App.3d 171, 177, 2008-Ohio-3509, ¶¶ 8-11, 894 N.E.2d 108, 112, and the trial court found the record indicated that Hill was "'mildly to moderately retarded.'" [*Shoop*,] 11 F.4th at 381 (majority opinion).

*Shoop*, 597 U.S. at __, 142 S.Ct. at 2579-2580 (Sotomayor, J., dissenting).

{¶ 34} Hill submitted with his Civ.R. 60(B) motion in the trial court an affidavit from the psychologist who had served as the State's expert when Hill first raised his *Atkins* claim. In the expert's opinion, under Ohio's current standard for intellectual disability, Hill has been intellectually disabled his entire life. Yet Hill's *Atkins* claim remains unresolved.

{¶ 35} I share the sentiment expressed in the second concurring opinion that courts should be cognizant of the consequences of delaying finality in a case like this. Concurring opinion of Deters, J., at ¶ 39. However, I would add that the State must ensure that it does not unnecessarily contribute to the delay. And the State must recognize its responsibility in guaranteeing the integrity of capital punishment in Ohio. It is at the very least questionable whether Hill's death sentence is constitutional. Accordingly, I concur in the court's judgment and suggest that, for the benefit of the family of Hill's victim, the judicial system, and the penological agencies and institutions responsible for carrying out Hill's sentence, Hill's claim that his death sentence is constitutionally infirm be resolved at the earliest possible instance following our remand.

_____

**DETERS, J., concurring.**

{¶ 36} I fully join the majority opinion. I write separately to underscore the injustice to the victim's family caused by the delay in bringing finality to this case.

{¶ 37} The majority opinion recounts the procedural path that appellee Danny Hill's appeals have taken since he was convicted and sentenced in March 1986. But the nightmare for 12-year-old Raymond Fife's family began on September 10, 1985, when Raymond was found by his father after he had been tortured by Hill. *State v. Hill*, 1992-Ohio-43, ¶ 1-6. Raymond died two days later. *Id.* at ¶ 7.

{¶ 38} To be sure, "no matter how heinous the crime, any conviction must be secured respecting all constitutional protections," *Shinn v. Ramirez*, 596 U.S. 366, 393 (2022) (Sotomayor, J., dissenting). But "[s]erial relitigation of final convictions undermines the finality that 'is essential to both the retributive and deterrent functions of criminal law.'" *Id.* at 391, quoting *Calderon v. Thompson*, 523 U.S. 538, 555 (1998). Raymond's family and the State of Ohio have been deprived of finality for over 40 years.

**{¶ 39}** It is true that some of the delay in achieving that finality may be attributed to the United States Supreme Court's holding in *Atkins v. Virginia*, 536 U.S. 304 (2002), that an intellectually disabled person may not be executed and its decision to leave application of that holding to the state courts. *See* majority opinion, ¶ 6. But other delays have occurred within the state court system. For example, when Hill's case returned to the trial court so that he could pursue his *Atkins* claim, he filed a petition to vacate his sentence in January 2003. Over three years later, the trial court denied his petition. And the motion being considered in this case—Hill's motion under Civ.R. 60(B) challenging the trial court's judgment denying his petition for postconviction relief—was pending in the trial court for nearly a year before the trial court dismissed it. While we of course want trial courts (and appellate courts) to give meritorious arguments proper consideration, we also want them to remain cognizant of the suffering of the victims and their families that results when courts unduly delay resolving matters before them.

**{¶ 40}** Today, this court takes a step toward preventing further delay in achieving finality in criminal matters by recognizing the inapplicability of Civ.R. 60(B) motions to judgments denying a criminal defendant's petition for postconviction relief. I agree in full with the majority opinion, and I concur in the court's judgment.

––––––––––––––––

Dennis Watkins, Trumbull County Prosecuting Attorney, and Charles L. Morrow, Assistant Prosecuting Attorney; and Dave Yost, Ohio Attorney General, Mathura J. Sridharan, Solicitor General, Michael J. Hendershot, Chief Deputy Solicitor General, and Stephen Maher, Assistant Attorney General, for appellant.

Stephen C. Newman, Federal Public Defender, and Calland M. Ferraro and Matthew Gay, Assistant Federal Public Defenders, for appellee.

Steven L. Taylor, urging reversal for amicus curiae, Ohio Prosecuting Attorneys Association.

_____